**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bernice Nelson,<br><br>    Plaintiff,<br><br>vs.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>    Defendant. | No. CV-25-08057-PCT-SPL<br><br>**ORDER** |

Before the Court are Plaintiff's Motion for Summary Judgment (Doc. 20) and Defendant's Cross-Motion for Summary Judgment (Doc. 28). Both Motions have been fully briefed. For the reasons that follow, Plaintiff's Motion will be denied and Defendant's Cross-Motion will be granted.[1]

**I. BACKGROUND**

  **A. The Settlement Act**

The Navajo–Hopi Settlement Act (the "Settlement Act") authorized a court-ordered partition of land previously referred to as the Joint Use Area—which was occupied by both Navajo and Hopi residents—into the Navajo Partitioned Lands ("NPL") and the Hopi Partitioned Lands ("HPL"). *See* Pub. L. No. 93-531, § 12, 88 Stat. 1716 (1974); *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). The Settlement Act also created what is now

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motions are suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

the Office of Navajo and Hopi Indian Relocation ("ONHIR") to disburse benefits to assist with the relocation of Navajo and Hopi residents who then occupied land allocated to the other tribe. *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989).

### B. Factual and Procedural Background

Plaintiff Bernice Nelson is an enrolled member of the Navajo Nation. (Doc. 1 at 4, ¶ 10). This is Plaintiff's second action in federal court seeking judicial review of OHNIR's denial of relocation benefits. (*Id.* at 1). On July 25, 2005, Plaintiff filed an Application for Relocation Benefits, which was denied by ONHIR. (Doc. 19-1 at 32–35, 49–50). ONHIR's denial letter stated that the agency found that Plaintiff did not reside on the HPL. (*Id.* at 49). Plaintiff appealed, and a hearing was held before an Independent Hearing Officer ("IHO") on December 7, 2012. (*Id.* at 114). On February 22, 2013, the IHO denied Plaintiff's appeal and upheld OHNIR's denial of benefits based on a finding that Plaintiff's "legal residence transferred from Finger Point to wherever her mother moved upon marriage in 1978 as [Plaintiff] was a 16 year old dependent minor . . . even though her physical residence remained at Finger Point." (*Id.* at 186). The IHO further found that when Plaintiff became a head of household in 1979, "she was a legal resident of an area other than Finger Point." (*Id.*). On April 29, 2013, ONHIR issued a Final Agency Action in Plaintiff's case. (*Id.* at 190).

On August 18, 2017, Plaintiff initiated an action seeking judicial review of ONHIR's denial of relocation benefits. (Doc. 19-2 at 5–17). The parties filed Motions for Summary Judgment, but on April 5, 2019, Defendant ONHIR filed a Motion to Remand. (*Id.* at 191–Doc. 19-3 at 4). The Court granted Defendant's Motion for voluntary remand because, although Plaintiff opposed the remand, "[b]oth parties agree[d] that there [were] inadequacies in the administrative decision." (Doc. 19-3 at 26).

On remand, the parties each hired an investigator "to assist with development of the

record." (Doc. 19-4 at 161). A remand hearing took place on May 8–9, 2023.[2] (Doc. 19-3 at 54–68). The IHO once again denied Plaintiff's appeal and upheld the denial of relocation benefits. (Doc. 19-4 at 160–Doc. 19-5 at 10). The IHO again found that Plaintiff had "not met her burden to establish by a preponderance of the evidence that she was a legal resident of the HPL on December 22, 1973, and December 22, 1974" or that she was a resident when she became a head of household in 1979. (Doc. 19-5 at 10). On December 22, 2023, the IHO denied Plaintiff's request for reconsideration. (Doc. 19-6 at 42). ONHIR then issued a Final Agency Action on January 17, 2024. (*Id.* at 44). On March 17, 2025, Plaintiff initiated this action seeking judicial review of ONHIR's denial of relocation benefits. (Doc. 1).

## II.   LEGAL STANDARDS

### A. Summary Judgment

Generally, summary judgment should be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When conducting judicial review of an administrative agency's action, "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. Immigr. & Naturalization Serv.*, 753 F.2d 766, 769 (9th Cir. 1985). Rather, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.* Summary judgment is therefore "an appropriate mechanism for deciding the legal question of whether [an] agency could reasonably have found the facts as it did." *Id.* at 770.

### B. APA Standards of Review

The Court's review of the IHO's decision under the Settlement Act is governed by the Administrative Procedure Act ("APA"). *See Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914 (9th Cir. 1995). Under the APA, the Court must uphold agency action unless it was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported

---

[2] The hearing was originally set for January 31, 2020 but "was postponed for several reasons." (Doc. 19-4 at 187).

3

by substantial evidence." *Bedoni*, 878 F.2d at 1122.

An ONHIR decision satisfies the "arbitrary and capricious" standard if "the agency examine[s] the relevant data and articulate[s] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Hopi Tribe*, 46 F.3d at 914 (internal quotation marks omitted). This scope of review is narrow, and the Court may not "substitute its judgment for that of the agency." *Id.* (internal quotation marks omitted). Still, a decision is arbitrary and capricious "if the agency . . . entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Likewise, if an agency "fails to follow its own precedent or fails to give a sufficient explanation for failing to do so," its decision is arbitrary and capricious. *Andrzejewski v. Fed. Aviation Admin.*, 563 F.3d 796, 799 (9th Cir. 2009).

An agency's decision satisfies the "substantial evidence" standard if it is supported by "such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995). The standard requires "more than a mere scintilla but less than a preponderance" of evidence. *Id.* The IHO may "draw inferences logically flowing from the evidence." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). "Where evidence is susceptible of more than one rational interpretation," the IHO's decision must be upheld. *Id.*

**C. The Settlement Act and Associated Regulations**

A Navajo applicant is eligible for benefits under the Settlement Act if he was a legal resident of the HPL as of December 22, 1974 and was a head of household at the time he moved off of the HPL. 25 C.F.R. §§ 700.147(a), 700.69(c); *Begay v. Off. of Navajo & Hopi Indian Relocation*, 305 F. Supp. 3d 1040, 1044 (D. Ariz. 2018), *aff'd*, *Begay v. Off. of Navajo & Hopi Indian Relocation*, 770 F. App'x 801, 802 (9th Cir. 2019). The applicant bears the burden of proving both the residency and head-of-household elements. 25 C.F.R.

§ 700.147(b). The residency element is at issue in this case.

Under the applicable regulations, determining an applicant's residence "requires an examination of a person's intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278; *see also Charles v. Off. of Navajo & Hopi Indian Relocation*, 774 F. App'x 389, 390 (9th Cir. 2019). Such manifestations of intent may include ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, medical records, school records, military records, employment records, mailing address records, banking records, driver's license records, voting records, home ownership or rental off the Joint Use Area, census data, Social Security records, marital records, court records, birth records, the Joint Use Area roster, and any other relevant data. 49 Fed. Reg. 22,278. "An individual who was, on December 22, 1974, away from the land partitioned to the Tribe of which he/she is not a member may still be able to prove legal residency." 49 Fed. Reg. 22,277.

### III. DISCUSSION

Plaintiff makes several arguments in her Motion for Summary Judgment. First, Plaintiff argues that the IHO's finding that she was not a resident was unsupported by substantial evidence and that the decision is arbitrary and capricious because the IHO misapplied the law of legal residency. (Doc. 20 at 3). Second, Plaintiff argues that ONHIR violated Plaintiff's due process rights and its federal trust responsibility. (*Id.* at 15–18). Third, Plaintiff argues that ONHIR failed to follow the District Court's mandate during the remand proceedings. (*Id.* at 18).

**A. Residency Finding**

Plaintiff argues that she was an HPL resident on December 22, 1974, even though her mother had moved away from the HPL. Plaintiff argues that when her mother married and moved off the HPL, her legal residence "did not follow her mother's but remained" on the HPL. (Doc. 20 at 7). She argues that "as a child of unwed parents [her] origin residency continues until a new one is established." (*Id.* at 13). Residency is determined by "intent to reside combined with manifestations of that intent." 49 Fed. Reg. 22,278; *see also Charles*,

774 F. App'x at 390. A child's legal residence is based on the residence of their parents. *Yazzie v. Off. of Navajo and Hopi Indian Relocation*, No. 22-16124, 2024 WL 1904560, at *2 (9th Cir. May 1, 2024) (citing *Hughes v. Indust. Comm'n*, 211 P.2d 463, 466 (Ariz. 1949)).

In the decision on remand, the IHO found that Plaintiff did not reside on the HPL during the relevant time period, using the correct legal standard. The IHO assessed Plaintiff's residency under the principle that "[a] minor applicant's residency is derivative of their parents and they are determined to be residents of HPL until they have relocated." (Doc. 19-5 at 3). The IHO found that the evidence showed that Plaintiff was not living on the HPL on December 22, 1973 or 1974; instead, the evidence showed that Plaintiff had moved off the HPL with her mother "by at least 1973 and 1974, if not earlier." (*Id.* at 8). Indeed, the IHO found that Plaintiff's mother "likely moved from the HPL at some point when [Plaintiff] was an infant or a toddler and took her children with her." (*Id.* at 7). Because Plaintiff's residency was derivative of her mother's, who was the custodial parent, the IHO determined that Plaintiff was not a resident of the HPL during that time. (*Id.* at 7–8). Plaintiff failed to meet her burden in showing that she was a resident of the HPL on December 22, 1974 or when she attained head of household status in 1979.

This determination is supported by substantial evidence in the record. The IHO considered Plaintiff's testimony stating that she was raised by her grandfather who lived on the HPL during the relevant time period. (Doc. 19-4 at 200). However, the IHO found that Plaintiff's testimony on this point was not credible because it contained contradictions on important facts. (*Id.*). Plaintiff testified that she was raised by her parents and spent equal time with them after they separated, but she also testified that her grandfather raised her. (*Id.*). The IHO found Plaintiff's testimony inconsistent with other testimony that, after Plaintiff's parents separated, Plaintiff's mother "was uncomfortable continuing to live in the Jasper Jensen area [on the HPL] because it was not within her own clan's maternal area bur rather that of [Plaintiff's father's] family." (*Id.*). The IHO also found this testimony inconsistent with the fact that Plaintiff's father "worked for the railroad and was mostly

6

gone starting from the time before [Plaintiff] was born until November 2000" as well as Plaintiff's father's testimony that Plaintiff spent "the 'majority of her time' with her mother because 'that is where she stayed.'" (*Id.* at 201). The IHO also considered that when asked who raised her, Plaintiff testified "I would say my grandpa did." (*Id.* at 198). However, the IHO noted that Plaintiff "was significantly delayed in providing answer to this question, and she was visibly upset and uncomfortable when she finally answered. Her demeanor suggested that her answer was forced and untruthful." (*Id.* n. 41).

The IHO also considered Plaintiff's father, Jimmy George's testimony that Plaintiff lived on the HPL when she was a child. The IHO found Jimmy George's testimony that Plaintiff "went to live with her mother only once she was a teenager" to be contradictory to evidence indicating that Plaintiff left the HPL "when she was an infant or toddler." (*Id.* at 207). Despite finding most of Mr. George's testimony unreliable, the IHO did give weight to his statement that Plaintiff spent the majority of her time with and stayed with her mother. (Doc. 19-5 at 7).

The IHO also found that Plaintiff did not meet her burden to show residency on the HPL in 1979 when she became a head of household. The IHO found that Plaintiff was working in Show Low in 1979, which is off the HPL. (Doc. 19-5 at 8). Plaintiff testified that, while she was working in Show Low, "her sister . . . was living with Jasper Jensen and would drive to Show Low to get her and take her to visit the HPL." (Doc. 19-4 at 203). The IHO found that Plaintiff's "testimony about her claimed return visits to the HPL was exaggerated and unreliable." (*Id.*). The IHO determined that Plaintiff's testimony about visits with her sister was not credible because her sister "was living with her husband and child in Snowflake at that time," not on the HPL with Plaintiff's grandfather, as Plaintiff thought. (Doc. 19-4 at 203–04). Moreover, the IHO found Plaintiff's claim that she travelled with her sister frequently to the HPL inconsistent with her sister's statement that she did not remember where Plaintiff was living or what she was doing during that time. (*Id.*). The IHO also concluded that Plaintiff did not have substantial contacts with the HPL homesite, even if she did make visits, in light of the factors outlined in 49 Fed. Reg. 22,278.

7

(Doc. 19-5 at 9).

"[A]n IHO's credibility findings are typically granted substantial deference by reviewing courts." *Beam v. Off. of Navajo & Hopi Indian Relocation*, 624 F. Supp. 3d 1069, 1077 (D. Ariz. 2022) (citing *De Valle v. Immigr. & Naturalization Serv.*, 901 F.2d 787, 792 (9th Cir. 1990)). The IHO is "in a position to observe [a witness]'s tone and demeanor, to explore inconsistences in testimony, and to apply workable and consistent standards in the evaluation of testimonial evidence." *Sarvia-Quintanilla v. U.S. Immigr. & Naturalization Serv.*, 767 F.2d 1387, 1395 (9th Cir. 1985). Still, an "adverse credibility finding must be supported by specific, cogent reasons, and cannot be based on speculation and conjecture." *Shire v. Ashcroft*, 388 F.3d 1288, 1295 (9th Cir. 2004). Here, the IHO provided specific and detailed reasons for his credibility findings, as detailed above.

The IHO also cited statements made to ONHIR's investigator in his decision. (Doc. 19-4 at 173–184). After Plaintiff's first case was remanded, "both parties contracted with investigators to assist in further clarifying information related to [Plaintiff's] background and circumstances." (Doc. 19-4 at 173). ONHIR's investigator, Louis St. Germaine, spoke to Plaintiff's family and other community members to discover where she resided. For example, the IHO summarized the investigator's interview with Plaintiff's mother, Annie Monroe, who stated that she moved off the HPL after she and Plaintiff's father separated. (Doc. 19-4 at 175). Plaintiff's sister, Lavina Yazzie, also recalled that Plaintiff's mother moved the children off the HPL and the children would spend summers and school breaks with their mother. (*Id.* at 178). The investigator also interviewed Julia Barnett, who stated that Plaintiff's mother and her children went to live with the Anderson family when Plaintiff was two or three years old. (*Id.* at 179–80).

Plaintiff argues that the investigator's testimony about these interviews constitutes "double hearsay" and is unreliable. (Doc. 20 at 12–13). "Not only is there no administrative rule of automatic exclusion for hearsay evidence, but the only limit to the admissibility of hearsay evidence is that it bear satisfactorily indicia of reliability. We have stated the test of admissibility as requiring that the hearsay be probative and its use fundamentally fair."

*Calhoun v. Bailar*, 626 F.2d 145, 148 (9th Cir. 1980). Factors the Court may consider in the analysis include possible bias of the declarant, whether the statements are signed and sworn, whether the statements are contradicted by testimony, whether "the declarant is available to testify and, if so, whether or not the party objecting to the hearsay statements subpoenas the declarant," the credibility of the witness testifying to the hearsay, and whether the hearsay is corroborated. *Id.* at 149.

Mr. St. Germaine's testimony constitutes substantial evidence. Both parties contracted with investigators to develop the record before the IHO. ONHIR hired Mr. St. Germaine, and Plaintiff hired Ms. Glennas'Ba Bizahaloni Augborne Arents "to review the report made by Mr. St. Germaine from his investigation and interviews . . . to identify any inaccuracies or discrepancies in those reports to determine whether they could be reliable in this proceeding." (Doc. 19-4 at 173–74). Plaintiff objected to Mr. St. Germaine's report being admitted into evidence and moved to exclude the report as hearsay and duplicative testimony. (*Id.* at 187–88). The IHO ruled that both investigators' reports would be admitted into evidence, and at the hearing, both investigators testified regarding their reports and each other's reports. (*Id.*). Both were subject to cross-examination. (*Id.* at 188). The IHO explained in the report that "[b]oth parties also offered hearsay evidence but neither party offered sworn testimony from any interviewee." (*Id.*).

The IHO found that Mr. St. Germaine was reliable and credible. (*Id.* at 196). In the decision, the IHO highlighted that Mr. St. Germaine had grown up on the Navajo Nation and was a Navajo Nation Police Officer for over thirty years. (*Id.* at 193). Mr. St. Germaine testified that he worked on fifty or sixty cases per year and has "conducted hundreds of interviews." (*Id.* at 194). In addition, Mr. St. Germaine had reliable methods, including asking interviewees about "important life events as a method to anchor events from a long time ago to specific time frames" and taking simultaneous notes in most interviews. (*Id.* at 195). On the other hand, The IHO found that Ms. Arents "did not reliably document discrepancies that negatively affect the overall reliability of [Mr. St. Germaine's] report." (*Id.* at 191). Specifically, the IHO explained that Ms. Arents' report "did not include

credibility determinations, nor did she attempt any independent assessment regarding the veracity of her subject's statements or the alleged inaccuracies or discrepancies that they identified." (*Id.* at 192). Ms. Arents also did not interview several key witnesses, including Plaintiff's mother and father, even though they were interviewed by Mr. St. Germaine. (*Id.*). Mr. St. Germaine's report contained the necessary indicia of reliability to constitute sufficient evidence, particularly in light of the fact that Plaintiff hired an expert to investigate Mr. St. Germaine's report and had the opportunity to cross-examine Mr. St. Germaine on the hearsay statements.

For all the reasons stated above, the Court finds that the IHO's determination that Plaintiff was not a resident of the HPL is not arbitrary and capricious and is supported by substantial evidence in the record. In addition, where there is ambiguous or conflicting evidence, ONHIR is "entitled to resolve [the] ambiguities and conflicts against" the applicant. *Daw v. Off. of Navajo & Hopi Indian Relocation*, No. 20-17261, 2021 WL 4938121, at *2 (9th Cir. Oct. 22, 2021). And where the evidence could support either of two inconsistent conclusions, it is not this Court's role to second-guess the IHO's decision. *See id.* at *1 ("It is a fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court." (internal quotation marks omitted)). In sum, there is substantial evidence to support the IHO's conclusion that Plaintiff was not a resident of the HPL, so the IHO's decision will not be reversed on this ground.

### B. Due Process and Trust Responsibility

Next, Plaintiff argues that ONHIR's refusal to accept her application for benefits in 1992 constitutes a due process violation and a violation of ONHIR's trust obligations. Plaintiff also argues that ONHIR's failure to hold a hearing within thirty days of her appeal violates the APA, due process, and trust responsibilities. Essentially, Plaintiff argues that the delays in her case violated her rights under the law, and as a result, the Court should order that Plaintiff receive relocation benefits.

First, Plaintiff has not shown how ONHIR's failure to accept her application in

1992, or any further delays throughout the process, constituted a due process violation or violation of the APA. Plaintiff asserts that the "right to relocation benefits is a property right," citing *Goldberg v. Kelly*, 397 U.S. 254 (1970), a United States Supreme Court case considering whether procedural due process requires a State to hold an evidentiary hearing prior to terminating someone's public assistance payments. (Doc. 20 at 16). Plaintiff does not explain how the denial of her initial attempt to apply for relocation assistance benefits constituted a denial of her due process rights.[3] Indeed, Plaintiff subsequently applied for relocation benefits in 2005, and her request was denied. (Doc. 19-1 at 49). Plaintiff also does not show how the delay between her 2006 appeal and December 7, 2012 hearing constitutes a due process violation. (*See* Doc. 20). Plaintiff argues that 25 C.F.R. § 700.311(d) requires hearings to be held within thirty days of the appeal, but that section provides: "All hearings shall be held within thirty days after Commission receipt of the applicant's request therefor *unless this limit is extended by the Presiding Officer*." (emphasis added). The letter accepting Plaintiff's appeal informed Plaintiff that "[t]he 30 day time limit for holding a hearing is hereby extended by the Hearing Officer, pursuant to 25 C.F.R. § 700.311(d)." (Doc. 19-1 at 55). ONHIR's requests for waiver of time were granted. (Doc. 19-1 at 69, 74–75). Plaintiff has provided no authority for her argument that this waiver was ineffective. (Doc. 20 at 17–18).[4]

Plaintiff also argues that if not for the delay, "Ms. Nelson and her witnesses would

---

[3]    The record shows that Plaintiff visited the relocation office in attempt to apply for relocation assistance benefits on May 13, 1992, but her application was not accepted because she did not apply prior to the July 7, 1986 deadline. (Doc. 19-1 at 7). A "post 7-7-86 contact review form" shows that on April 20, 2005, a review showed that a notice of opportunity to request an eligibility determination should be sent to Plaintiff. (*Id.* at 28).

[4]    Plaintiff also does not address the fact that her attorney from the Navajo-Hopi Legal Services Program ("NHLSP") requested a continuance of her hearing because counsel was not able to get in touch with Plaintiff to prepare for the hearing. (Doc. 19-1 at 96) ("[D]espite NHLSP['s] multiple efforts to get back in touch with Bernice about the availability of her other witness, step-grandmother Nancy Jensen, for her hearing this Friday, NHLSP was just able to speak with Bernice this morning for the first time. . . . We have not been able to reach Bernice again today despite more multiple attempts to contact her by phone."). Plaintiff's counsel requested a second continuance as well. (Doc. 19-1 at 102).

have been better able to remember what occurred a couple of years before." (*Id.* at 15–16). She asserts that this "renders the hearing a violation" of her due process rights. (*Id.*). But Plaintiff does not explain how the passage of time and alleged lack of memory by any witnesses would change the outcome of the decision. (*Id.*). Instead, it appears that Plaintiff was simply unable to meet her burden and prove her eligibility for relocation benefits. *See Begay v. Off. of Navajo & Hopi Indian Relocation*, 771 F. App'x 384, 384–85 (9th Cir. 2019) ("Begay argues that passage of time . . . could explain inconsistencies. But we give substantial deference to an agency's credibility findings, and even allowing for some inconsistencies, Begay did not meet his burden). Therefore, Plaintiff has not explained how there was a due process or APA violation.

Nor does Plaintiff show how there has been a breach of ONHIR's trust obligation. The Court is well aware of "the longstanding general trust obligation that has dominated Government interaction with Native Americans" as well as "the many grants of express trustee authority in the Settlement Act." *Bedoni*, 878 F.2d at 1124. The Settlement Act places upon ONHIR "an affirmative duty to manage and distribute the funds appropriated pursuant to the Settlement Act such that the displaced families receive[ ] the full benefits authorized for them." *Id.* at 1125.

Plaintiff argues that ONHIR breached its fiduciary duty by failing to inform her of the deadline to apply for relocation benefits. (Doc. 20 at 15) (citing *Herbert v. Off. of Navajo & Hopi Indian Relocation*, CV06-03014-PCT-NVW, 2008 WL 11338896, at *6–7 (D. Ariz. Feb. 27, 2008). In *Herbert*, the Court determined that ONHIR "was required to notify and inform 'each person' identified as potentially to subject to relocation." *Id.* at *6. In that case, the Court determined that ONHIR had information indicating that the plaintiff was residing on the HPL, making him "a person identified as potentially subject to relocation." *Id.* Unlike in *Herbert*, Plaintiff has pointed to no evidence showing that ONHIR believed Plaintiff to be residing on the HPL and therefore a person potentially subject to relocation. (*See* Doc. 20). Instead, the record shows that ONHIR determined multiple times that Plaintiff was not eligible for relocation benefits because she was not

12

residing on the HPL during the requisite time. (*See* Doc. 19-1 at 49, 183–88). Plaintiff has also not shown a breach of ONHIR's trust obligations. Because the IHO determined that Plaintiff is not eligible for benefits, and because this Court finds no reversible error in the IHO's decision, ONHIR has no duty to disburse benefits to Plaintiff.

### C. Scope of Remand

Plaintiff's final argument is that ONHIR's fact investigation prior to the second hearing violated the remand order. (Doc. 20 at 18–19). It its Order granting Defendant's Motion to Remand, the court reasoned that "[b]oth parties agree that there are inadequacies in the administrative decision, and all parties, including the reviewing court, would be better served by a more accurate record." (Doc. 19-3 at 26). The court remanded the matter for "further proceedings consistent with [the] Order, including for the issuance of a new administrative decision." (*Id.*). Plaintiff argues that "[r]ather than develop the factual record, ONHIR simply hired an investigator who inaccurately summarized family members' testimony in an effort to deny [Plaintiff's] application." (Doc. 20 at 18).

The Court finds that the investigative reports and testimony allowed the IHO to develop the record in accordance with the remand order. Not only did the ONHIR contract with an investigator, but so did Plaintiff. To the extent Plaintiff is arguing that the investigative reports and testimony should not have been admitted, those arguments have been addressed above. For these reasons, the IHO's hearing comported with the Court's Order remanding the matter for further proceedings. Therefore, the Court will not reverse the IHO's decision on this ground.

### IV. CONCLUSION

Defendant has demonstrated that it is entitled to summary judgment on Plaintiff's claims. Therefore, Plaintiff's Motion for Summary Judgment (Doc. 20) will be denied and Defendant's Cross Motion for Summary Judgment (Doc. 28) will be granted.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 20) is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Cross Motion for Summary Judgment (Doc. 28) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment for Defendant and **terminate** this action.

Dated this 11th day of February, 2026.

*[signature]*

Honorable Steven P. Logan
United States District Judge